IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DOLLY KAY CONWAY, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 150083C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered November 17, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

This is a residency appeal. Plaintiff appeals Defendant's Notices of Determination and Assessment (assessments) dated January 27, 2015, for the 2010, 2011, and 2012 tax years. A trial was held in the Oregon Tax Courtroom in Salem on October 12, 2015. Plaintiff appeared and testified on her own behalf. Debbie Smith appeared and testified for Defendant. Plaintiff's Exhibits 1 to 9 were received without objection. Defendant's Exhibits A to F were received without objection.

I. STATEMENT OF FACTS

Plaintiff was born in 1957. (Ptf's Ex 5 at 4.) Plaintiff testified that she has lived in her parents' home in Richland, Washington, on and off since 1962. (*See also* Ptf's Ex 1 at 1–2.) Plaintiff graduated from Richland High School, in Washington, in 1975. (*Id*. at 1.) Plaintiff testified that she got a Washington driver's license "in the early 1970s." Plaintiff testified that her domicile has been in the state of Washington since 1962. In her written narrative submitted

into evidence as Exhibit 1, Plaintiff indicated that her Washington domicile is her parents' home in Richland, Washington, where they continued to live during the years in question (2010 to 2012). However, Plaintiff testified that she lived in a recreational vehicle four miles from her parents' home from 2009 through 2013, as explained more fully below. (*Id*.)

Plaintiff went to work for Bechtel, a large engineering and construction company, on May 4, 1981. (Ptf's Ex 6 at 2.) Plaintiff initially worked for the company in Richland, Washington. (*Id*. at 1.) Beginning in February 1984, Plaintiff's employment for Bechtel took her to six other states, including Oregon.[1] (*Id*.) The first of those states was Michigan. (*Id*.) Some of Plaintiff's employment in other states lasted several years. For example, Plaintiff worked in Salem, New Jersey, from August 1984 to March 1986 and Pottstown, Pennsylvania, from March 1986 to January 1992. (*Id*.) There is no indication that Plaintiff bought property in any of the states, except for Oregon. Plaintiff was unemployed for several months in the middle or latter part of 2009 before being rehired by Bechtel on December 14, 2009, for a position in Richland, Washington. (*Id*. at 2.) Plaintiff testified that she has worked for Bechtel in Richland, Washington, since her rehire in December 2009.

Plaintiff testified that she bought a home in Portland, Oregon, in 1999 because she was working on a long-term project for Bechtel related to the extension of Portland's rail-car service to the airport. Plaintiff began work on the Portland job in September 1998. (Ptf's Ex 6 at 1.) Defendant submitted a printout from the Multnomah County Assessor's records that indicates Plaintiff purchased her home in Portland on March 1, 1999. (Def's Ex E at 1.) Plaintiff testified that she lived in her Portland home with her domestic partner for nine years before moving back to Washington in December 2009. All of Plaintiff's jobs for Bechtel during the years she lived

---

[1] Plaintiff worked in Michigan, New Jersey, Pennsylvania, California, Alabama, and Oregon. (Ptf's Ex 6 at 1.)

in her Portland home were in Oregon and southwest Washington. (*Id*.) Plaintiff testified that her partner continued to live in her Portland home after Plaintiff moved to Washington in 2009, and her written narrative explains that her partner stayed in that home "for business, family, and to maintain the property." (Ptf's Ex 1 at 1.) Plaintiff also testified that she did not sell the home in Portland after moving to Washington because of the recession.

Plaintiff testified that she lived in a recreational vehicle (RV) parked in an RV park approximately four miles from her parents' home from December 2009 through 2013. (*see also* Ptf's Ex 1 at 1.) According to her testimony, Plaintiff moved to the RV park in Washington from her home in Portland, Oregon, in December 2009, after being rehired by Bechtel. Plaintiff testified that she moved into the RV as opposed to her parents' home in Richland because their home had only one bathroom and it would have been difficult to get ready for work in the morning with three people sharing the one bathroom. Plaintiff also testified that her parents were aging, their health was failing, and that another benefit of being in Richland was that she could help care for her parents. Plaintiff testified that her parents both died in 2014. (*See also* Ptf's Ex 7 at 7; Ptf's Ex 8 at 5.)

Plaintiff acknowledged that she obtained an Oregon driver's license in April 1995, and that she renewed her Oregon license several times, the latest being March 2011. (Def's Ex C at 1–2.) Plaintiff surrendered her Oregon driver's license and obtained a Washington license on December 24, 2014. (Ptf's Ex 5 at 4; Def's Ex D at 1.) The evidence shows that Plaintiff was registered to vote in Oregon. (Def's Ex F at 1.) Plaintiff did not dispute that fact. Plaintiff testified that she changed her voter registration to Washington in 2014. Plaintiff acknowledged on cross examination that she changed her driver's license and voter registration from Oregon to Washington after the Oregon tax audit began. Plaintiff testified that she had several vehicles

registered in Oregon prior to and continuing after the years at issue. (*See also* Ptf's Ex 5 at 2.) Plaintiff testified that she kept her vehicles registered in Oregon after her move to Washington because she had a company vehicle and her father's car available for use in Washington and her domestic partner used her Oregon registered personal vehicles. The evidence shows Plaintiff later registered two vehicles in Washington in December 2014. (*Id*. at 5-6.) It is unclear from the evidence whether those are the same vehicles that were previously registered in Oregon, but given the fact that there is no evidence that Plaintiff had any vehicles registered in Oregon after registering those two vehicles in Washington, the court assumes that Plaintiff transferred her vehicle registrations from Oregon to Washington at that time.

Plaintiff's address on her W-2 wage and tax statements from her employer Bechtel for 2009, 2010, 2011, and 2012 was the street address of Plaintiff's home in Portland, Oregon. (Def's Ex B at 1–4.) Smith testified that Plaintiff had her employer change her address to Washington in 2014. Plaintiff did not dispute that testimony. Plaintiff testified that she continued to have most of her mail sent to her Portland, Oregon, home after she moved to her RV in Washington in December 2009. Plaintiff testified that she did that in part because her father, who was living with her mother in Richland, Washington, had dementia and either lost or shredded some of her mail. Plaintiff further testified that her partner drove up to Washington from Plaintiff's home in Oregon several times a month to visit her and that she brought Plaintiff's mail to her when she came to visit.

Plaintiff acknowledged on cross examination that she filed full year Oregon resident tax returns for 2000 to 2002, 2005, to 2009, a nonresident return for 2003, and a part-year return for 2004. (*See also* Def's Ex A at 4.) Plaintiff also acknowledged that she used her Portland,

/ / /

Oregon, address on all of those returns. Plaintiff did not file Oregon returns for 2010, 2011, or 2012 (the three tax years at issue).

## II. ANALYSIS

Oregon imposes a state income tax on every resident of this state and every nonresident with Oregon-source income. ORS 316.037(1), (3).[2] Oregon defines a "resident," in relevant part, as:

> "(A) An individual who is domiciled in this state unless the individual:
>
> "(i) Maintains no permanent place of abode in this state;
>
> "(ii) Does maintain a permanent place of abode elsewhere; and
>
> "(iii) Spends in the aggregate not more than 30 days in the taxable year in this state[.]"

ORS 316.027(1)(a)(A). Thus, a taxpayer is a resident of Oregon if she is domiciled in Oregon and does not fall within the "safe harbor" provision of ORS 316.027(1)(a)(A)(i) to (iii). *Gorski v. Dept. of Rev.*, 20 OTR 452 (2012).

Domicile is a common-law concept comprised of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.*, 313 Or 284, 289, 832 P2d 1228 (1992) (citing *Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952) (internal quotation marks omitted)). That determination, while based on intent, must be established by all the facts and circumstances. *dela Rosa*, 313 Or at 289–290. Plaintiff has the burden of proof and must establish her case by a preponderance of the evidence. ORS 305.427 (2013).

/ / /

---

[2] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2009 for the 2010 and 2011 tax years and 2011 for the 2012 tax year.

Oregon Administrative Rule (OAR) 150-316.027(1)(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence." While an individual can have more than one residence, she "can have but one domicile." *dela Rosa*, 313 Or at 289 (internal quotation marks omitted); *see also Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945); OAR 150-316.027(1)(a).

"The law is also clear that once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile." *Duncan v. Dept. of Rev.*, TC 4315, WL 792454 at *1 (Nov 3, 1998).

To effect a change of domicile, "three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." *White v. Dept. of Rev.*, 14 OTR 319, 321 (1998); *see also Elwert*, 196 Or at 265; *Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent." *Hudspeth v. Dept. of Revenue,* 4 OTR 296, 298–99 (1971). Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual[.]" *Butler v. Dept. of Rev.*, TC-MD 050801D, WL 2041284 at * 4 (July 18, 2006). Factors contributing to a determination of domicile "include family, business activities[,] and social connections." OAR 150-316.027(1)(1)(a).

/ / /

/ / /

A.    *Did Plaintiff Establish an Oregon Domicile?*

Clearly Plaintiff was a domiciliary of Washington growing up. However, the facts show that Plaintiff changed her domicile to Oregon in 2000. By the year 2000, Plaintiff had had an Oregon driver's license for approximately five years. She obtained her Oregon license in April 1995 and renewed it in March 2011. Plaintiff began working a multi-year job in Portland for her Washington-based employer in 1998 and bought a home in Portland, Oregon, in March 1999, where she lived with her partner. Plaintiff was registered to vote in Oregon, had several vehicles registered in Oregon, and the address on file with her employer was her Portland home, an address which appears on her W-2 wage and tax statements for the years in question. Additionally, Plaintiff's mail was delivered to her home in Portland and she began filing full-year Oregon resident tax returns in 2000. Thus, Plaintiff had a residence in Oregon, and demonstrated an intent to abandon her Washington domicile and acquire a new domicile in Oregon. *White*, 14 OTR at 321.

B.    *Did Plaintiff Abandon Her Oregon Domicile?*

The court must now decide if Plaintiff abandoned her Oregon domicile before or during any of the three tax years under appeal. Plaintiff contends that Washington has always been her state of domicile. However, the court has already concluded that Plaintiff abandoned her Washington domicile in 2000 and became a resident of Oregon domiciled in this state that year.

The first element of the three-part test for a change in domicile is whether Plaintiff established a "residence" in Washington. *White*, 14 OTR at 321. The term residence as used in the three-part test is synonymous with abode or dwelling place. *See Ramsey v. Dept. of Rev.,* 7 OTR 478, 481 (1978). "There is a general understanding that [abode] signifies a building or shelter which is the dwelling place of a person." *Id.* The evidence shows that Plaintiff moved

from her home in Portland, Oregon, where she had lived with her partner for nearly 10 years, into an RV in Washington, in December 2009. Plaintiff's RV in Washington became her residence.

The next question is whether Plaintiff intended to abandon Oregon as her old domicile. *White*, 14 OTR at 321. Plaintiff argued during closing that her move to Washington in December 2009 was permanent. However, Plaintiff's alleged intent to permanently move to Washington is not borne out by the facts. Plaintiff retained significant ties to Oregon. After working for nearly 10 years in Oregon and southwest Washington, Plaintiff accepted a full-time position with Bechtel in Richland, Washington, in December 2009. The distance between Plaintiff's home in Portland and her job in Richland made it impractical for her to commute to work from Portland. Plaintiff therefore moved to Washington. Plaintiff moved into an RV. She kept her home in Portland, and her domestic partner continued to live in that home. Plaintiff retained her Oregon driver's license, which she originally obtained in 1995 and renewed in March 2011. She did not surrender her Oregon driver's license until December 2014, at which time she got a Washington driver's license. As Defendant noted, that was after the Oregon tax audit was initiated. Plaintiff continued to have her vehicles registered in Oregon until December 2014. Plaintiff kept her Oregon voter registration active until sometime in 2014. And Plaintiff continued to have the majority of her mail delivered to her Portland home.

Plaintiff did explain that she kept her house in Portland because of the recession and because it provided a place for her domestic partner to live. Plaintiff also explained that she kept her personal vehicles registered in Oregon because she had transportation available in Washington and her partner used her Oregon-registered vehicles. Plaintiff also testified that she continued to have most of her mail delivered to her home in Portland because her father lost or

destroyed some of her mail that went to her parents' home in Washington. Those facts do help explain why Plaintiff kept some of her "Oregon ties"; nevertheless, the court still finds those ties to be significant. Whatever the practical reasons, the fact remains that Plaintiff maintained a home in Portland where her domestic partner continued to live. Plaintiff thus maintained an important social and physical connection to Oregon. Moreover, Plaintiff did not adequately explain why she retained her Oregon driver's license and renewed it in March 2011, or why she did not change her voter registration from Oregon to Washington if Washington was indeed her intended new domicile beginning in December 2009. In sum, Plaintiff failed to demonstrate by a preponderance of the evidence that she intended to abandon her Oregon domicile. The court therefore concludes that Plaintiff was domiciled in Oregon during 2010, 2011, and 2012.

Having concluded that Plaintiff did not abandon her Oregon domicile, the court turns to whether Plaintiff met the requirements for the safe harbor found in ORS 316.027(1)(a)(A)(i) to (iii) for any of the tax years at issue. Neither party addressed this issue specifically. As a result, the evidence presented was insufficient for the court to conclude that Plaintiff met the safe harbor requirements. In particular, the court is not persuaded that Plaintiff maintained "no permanent place of abode" in Oregon because she maintained a home in Portland where her domestic partner lived during the tax years at issue. Moreover, there was no evidence indicating the number of days Plaintiff spent in Oregon after moving to Washington; therefore, the court is unable to find that Plaintiff spent less than 30 days in Oregon during any of the tax years at issue.

### III. CONCLUSION

While the facts of this case present somewhat of a close call, the court concludes that the preponderance of the evidence shows that Plaintiff became an Oregon resident in 1999. Furthermore, Plaintiff failed to show that she formed an intent to abandon her Oregon domicile

and acquire a Washington domicile when she moved to Washington in December 2009, or at any time in 2010, 2011, or 2012. Plaintiff also failed to show that she met the requirements for the safe harbor found in ORS 316.027(1)(a)(A)(i) to (iii). The court therefore concludes that Plaintiff was a resident of Oregon for the years at issue (2010, 2011, and 2012) subject to Oregon's income tax for those three years. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and Defendant's assessments are upheld.

Dated this ____ day of December 2015.


_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*


*This document was filed and entered on December 4, 2015.*